Good morning and may it please the court. My name is Mr. Newman, my friend. My name is Jim Stevenson. I represent Dominicks Foods in this claim. This is a matter that is coming up from the Industrial Commission that reversed the award of the arbitrator. Our position here really is that the Industrial Commission's decision was against the manifest way to the evidence. And it was against the manifest way to the evidence because we judge credibility. And that starts with accident. The petitioner testified at trial that he fell from his cabs, his truck cab straight to the ground, landing on his knees and could not get up. Nowhere is that found in the record. It cannot be reconciled with what petitioner told any doctor or what petitioner told his employer after the accident. So now we're faced with two different histories of accident. One that the petitioner testified to under oath and the other that different versions that he told the doctors in this case. It's our opinion the petitioner cannot be deemed a credible witness, that there's only one outcome to this. If the Industrial Commission was wrong when it says that, when it talks about the exact mechanism of injury is unclear, the petitioner experienced a significant jolt. Nowhere is that found in the record. What the petitioner testified to is he fell from the cab directly to the ground. We recognize the fundamental principle. It's within the province of the Commission to judge the credibility of the witnesses and the weight to be given to the testimony. So you've alluded to a conflict between his testimony under oath and the medical records. That's correct. Why can't the Commission choose to believe his testimony under oath? Because I believe when someone has two different versions of what happened, there's only one outcome that can come out of that. And that is that that is not credible. When the Industrial Commission is viewing credibility of witnesses, it's generally a he said, she said. And so then they are in a position to say this witness is more believable than the other witness. Is there anyone in this case who testified that he didn't fall out of the truck? No, there is not. So this isn't a he said, she said? It is not. You would say he said one thing, he said another thing. He said one thing when he testified at trial, and he said another thing when he went to every single doctor that he treated. Or at least that's the way the doctors recorded it. That's the way the doctors recorded it. Has it been your experience that doctors always record exactly what the patient says? I think if the doctors were told that he fell from a cab four feet to the ground and landed on his knees, I think that would be recorded somewhere in the medical records. Yes. Isn't it recorded though that he had something happen, he fell in some way? Well, what was recorded was not what he testified to. Not exactly. Well, not at all, in my opinion. Okay, what was recorded? That he slipped and twisted. And he caught himself. And hurt his upper right leg. That's correct. But again, it's not what he testified to at trial. And I think where we get that is that after we take the deposition of our expert, Dr. Jim Cohen, he testifies that trauma certainly can be an accelerator of this condition, osteoarthritic hip, which was severe and degenerative. After that testimony comes in, then petitioner takes the trial, we're finished with the depositions, and now we have a fall from the truck directly striking the ground. Before that, there was no trauma. No one identified to, no one could identify any objective trauma to that hip. It was a degenerative hip, which really both doctors in the end said, even Dr. Chasen, the treating physician, said if I were a betting man, and he volunteered this, if I were a betting man, would I bet he would need a hip replacement versus someone who is younger and thinner? Absolutely. He weighs 330 pounds, I noticed in the record. Is that correct? That's right. At least he did. So you've got a situation, and did the claimant proceed on the theory that this was an aggravation of a preexisting condition? He has. Okay. So there's no evidence that this aggravated a preexisting condition? Well, I don't believe, I believe that it did not because now we have to look at a petitioner who has not given credible testimony. And he cannot be deemed credible on the issue of accident. And that goes to every facet of this case, including causation. Dr. Chasen said when he tied this up, I wouldn't be surprised if he scraped away the last bit of cartilage. Well, what was the basis for Dr. Chasen's opinion on that? And the basis was he was relying on an accurate and honest history from petitioner. Did he have an accident report? Was there an accident report in this case? There was. And what does it say was the injury, and how did it happen? What does it say in the accident report? I think the accident report says he slipped and fell. I have it in the record. It's in our exhibits. I think it's exhibit maybe 10. And does he say that he left his tractor, slipped and twisted his back and hurt his upper right leg? I believe that's what it says, yes. And when was that made out? On the date of injury. And what did he testify at the hearing? He testified that he fell from his cab to the ground, four feet, missing the last step, landing on his knees,  So he was essentially the same mechanism of accident recorded by the employer the date of the injury as he testified to at the time of the hearing. Why couldn't the commission believe that? I don't believe that it was the same mechanism. He slipped and twisted and caught himself. As he was exiting his cab? I'm sorry? As he was exiting his cab? As he was getting out of his cab, that's right. Because it doesn't say four feet is defective or what? That's what the petitioner testified to. That's what the petitioner testified to. It was on the employer's accident report. Yes. And I think you recorded. I have it. Would you like me to? Yeah, get it. Let's hear what it actually says. It says he was getting out of his truck. Read the whole thing. What job was the employee performing when injured? Getting out of a truck. Does it say anything else about twisting or hurting his upper leg? Not on my exhibit number 12, which is the first report of accident. I'm looking for a sentence that suggests that the report says twisted his back and hurt his upper right leg. Got out of truck and slipped on step and body twisted. Yeah, hurt upper right. Okay. That's right. How is it really markedly different from what he testified to? Because I think when we look at what the doctors talk about this disease, that it's a progressive disease. It doesn't get better. It never cures without a joint replacement. It can be accelerated. And it can be accelerated by direct trauma to the hip. That's what Dr. Cohen testified to. And in this case, there was no direct trauma to the hip. Even Dr. Chasen admitted that. No one could find any direct trauma to the hip, causing Dr. Chasen to say, well, if Petitioner is being accurate and honest with me, again, that he was pain-free before the accident, then I wouldn't be surprised if he scraped away the last bit of cartilage. And his basis of that, again, was the Petitioner's statement that he was pain-free prior to the accident but had pain after the accident. And that's when I think you also have to go, is that even credible? Because the Petitioner walked with a marked limp before the accident. And there are video recordings of him entering and exiting the facility limping. And Dr. Chasen, the treating physician, described that as a Trendelenburg gait. And what was a Trendelenburg gait? Now, the Petitioner is going to say, well, it really wasn't a limp. I walk like a duck because my feet hurt sometimes. But that's not what Dr. Chasen said. He said he had a Trendelenburg gait, and that is a pain-coping mechanism for the hip. Prior to the incident? Yes. Okay. He walked with a limp, however you want to view it when you look at the videotape or you look at the DVD. Sorry, I'm aging myself. The difference here is that his condition was so degenerative that anything in the normal activity of life would have caused this degeneration. It was just going to give out anyway, right? That's what Dr. Cohen said, yes. He said that if the wind blew the wrong way, that this condition would be as it is today. That's correct, and that he would need a replacement on that hip. After this accident, was he able to continue his employment? Was he able to continue his employment after this accident? Well, Dr. Chasen had indicated, at least in his deposition, that he was physically capable of returning to work. If he wanted to, he would let him return. He did not return. But his problem did progress after this accident. Do you agree? It was worse after this occurred? I have no idea. Six months before the accident, he went through a physical to drive a truck. It was clear to drive a truck, and they didn't note any major problems. Isn't that true? They did test him for some internal problems. I think it was hypertension and some other issues, and they cleared him for a one-year driver's license when the normal was two. Your other situation? Well, if I could just also respond to that. The DVDs that we introduced as evidence do go back at least two or three months documenting a limp. And the petitioner testified seven or eight years of limping on and off. So your other issue you have is that there doesn't seem to be any contact trauma until after. There seems to be no evidence of contact trauma until after the doctor renders his opinion about trauma, and then the claimant gives that testimony at trial, right? That's correct, yes. Okay. There's no objective trauma to that hip. It's a severe, they do, he does complain of thigh pain, and they do an x-ray of the hip, and I believe it was Dr. Zendrick said he has severe osteoarthritis of that hip. Yeah, but I think what you're trying to say is that the accident report talks about I catch myself, I've twisted, whereas the live testimony is I fell to my knees and had a traumatic body contact with concrete or pavement. Concrete. Which calls into question his veracity that he's basically adopting your doctor's mechanics of injury for compensability. Yes, sir. Okay. And that's our case. We think the veracity is called into question. We think the industrial commission, by saying that the exact mechanism of injury is unclear, that nonetheless he experienced a significant jolt is against the manifest weight of the evidence because the evidence is the petitioner testified he fell. And it is not for the industrial commission to assume or to say, well, we're going to speculate one way or the other he hurt himself. I mean, that's a basic tenet of workers' compensation, that speculation cannot support an award. And on that basis, we feel the industrial commission's decision is against the manifest weight of the evidence. I will finalize my remarks, let Mr. Nierman come up, by saying that on the TTD issue, the commission was also wrong. Because Dr. Chasen clearly testified in his deposition that this man was physically capable of returning to work. And if he wanted to, he would have let him. And the petitioner did not return. That deposition was taken on March 23, 2009. With that, we rest. Thank you very much for your time. Any questions? Thank you, counsel. May it please the Court. Counsel. This seems to me a fairly straightforward, simple case from a manifest weight stand-in. We have a dispute that the Respondent has been able to create out of the exact mechanism of accident. We do have accident reports from the day of the accident at C-458 and C-459 of the record, where it says twisted back and hurt his right upper leg in the accident while exiting truck. That's as clean of an accident report as I've had in a case in some time. And I would submit that that supports the twisting mechanism required to cause the damage to the knee to give rise to the complaints which led to the surgery, as Dr. Chasen testified. The pre-existing limp, when you actually consider the evidence that was presented, it never actually existed. The guy had some problems with his feet over the last ten years. He walked like a duck on occasion. He said that was not constant. If you look at his prior treater records for the two to four years prior to this, there's no reference to any limp issues, no reference to any gait difficulties. There's no reference to even the walking like a duck because of the feet. So there's nothing in the medical records, and that's what we have from a most objective standpoint. There's nothing for the years prior to this indicating there was any kind of a limp. Counsel tells you that the video shows, the pre-accident video shows that there was a limp. If you look at the video, at the top of the video screen, there is a, it catches the traffic flowing by on the passing road. I think it's 294. Traffic's moving 45, 50 miles per hour. It moves like this as it's going. It's not a continuous running video. That's why even the arbitrator in this case mentioned that the video was not probative of anything. It's a terrible video. So, of course, when Mr. Lysak's walking on the video, as anybody would, they look like they're halting as they're walking. So we have a limp created by bad video. That's why the arbitrator didn't buy the video. That's why the commission didn't buy it. How do you make a closing counsel's argument that there are some inherent conflicts between the testimony the claimant gave and the medical records? What's your response to that argument? I don't think there is an inherent difference in the two. I think what Mr. Lysak did during trial was further fill out what happened, because the accident report was pretty brief. It's getting out of the truck, slipped and fell, twisted my leg. We filled in the details behind that, or he filled in the details behind that. And I don't recall that we – I'm sure we didn't rely upon their doctor's mechanism of accident to support the case. We have our own doctor. We have all the records saying that we have a guy that no longer works after this. So if there is a difference that can be read into the guy's testimony versus the records, that is a dispute that I think the commission was supposed to draw conclusions from and resolve. And I think they did in this case. I think they did it correctly. So I'd ask that you affirm the decision of the commission, unless you have any more questions. Well, the commission made a finding that he gave these different mechanism of injury reports, but it said that it did not fall. Okay. Did he testify he fell at trial? He probably did. If counsel said he did, I assume that's what he said. But I think it's immaterial for this reason. Everybody agrees that before the accident, the guy had no pain in his hip. There's no evidence of pain in his hip beforehand except for the halting video, okay, which is not probative. After the accident, we definitively have pain in the hip, which we didn't have before. We even have their doctor admitting the pain started with this accident. He couldn't decide, their IME couldn't decide, is it from the back, is it from the hip, because you can have some overlap of the pain distribution if it's a back injury versus the hip. He couldn't decide which one it was. The commission noted he can't make up his mind on which one it is, so they didn't consider it to be that probative of an opinion against causation. So what we have is we have a guy that's healthy. He passes his physical. He does his work without missing any time. He has this event, which nobody disputes. There's apparently video on this, too, which never turned up at trial. And we have a dramatic change in the guy's ability to continue working afterwards. We have a couple of doctors saying the pain onset then. They also said even if you have a bad preexisting condition, you don't take the hip out and replace it unless it's so bad that you need to do that. In this case, there's no evidence it was bad before other than radiographs, x-rays showing there was a degenerative condition. Afterwards, there's no dispute that we had this big pain that led to the hip replacement. So even if there is an issue over falling to the ground, I propose again that we were just filling out the details, or he was filling out the details of the accident. I think from a mechanical standpoint, it doesn't make any difference. The twisting mechanism was ‑‑ It was twisting before impact of the pavement. Yeah, I think the impact is kind of immaterial. For the back, I could see that might be an issue because you might jar the back. I guess it could do to hips, too, but you'd think both hips would be hurting after that. So I think the twisting mechanism, which they reported in the accident report, is exactly what we were looking for. We didn't even know the accident report existed until we got to trial and they went out during a break and brought it back in. So that just verified exactly what we thought was going on, what was going on. So again, we'd ask that you affirm the commission's finding. I think it's certainly not against the manifest way of the evidence. Thank you, counsel. Counsel, you may reply. As far as the accident is concerned, petitioner testified that he, quote, just turned my whole body and I twisted and I fell to the ground on my knees. He goes on to say, I could not get up, period. Question, did you hit that lower step? Answer, no. Or did you go straight to the ground? Answer, straight to the ground. He testified he walked like a duck for seven to eight years, but Dr. Chasen said that was a Trundleberg gait and that was a hip pain coping mechanism. So you can describe it however you want. You can look at the video and you can see what the walking is. Dr. Chasen observed him when he was in his office walking with a Trundleberg gait. The twist, whether it's a twist or a fall, does make a difference because this accident was unwitnessed. And so it does go to the petitioner's credibility and it does go to the veracity. And finally, on the video, there are other people entering and exiting the facility and they are not walking with a limp. So the video is shot at like 1,100th speed or whatever the surveillance cameras shoot these days. Other people enter and exit that facility and they are not limping. But Mr. Lasik is, and he's limping months before the accident, not just the day of, months before the accident. I think the videos go back to April. Thank you very much for your time. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement and a redispositional issue. The court will stand at brief recess.